[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 629 
¶ 1. Flavian L. Gray was tried and convicted of business burglary. Gray appeals, raising the following issues:
 I. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING GRAY'S MOTION FOR A MISTRIAL.
 II. WHETHER THE TRIAL COURT ERRED IN OVERRULING GRAY'S COUNSEL'S OBJECTIONS TO HEARSAY WHILE SUSTAINING OBJECTIONS BY THE PROSECUTION.
 III. WHETHER THE TRIAL COURT ERRED IN DENYING GRAY A JURY INSTRUCTION FOR TRESPASS.
 IV. WHETHER THE TRIAL COURT ERRONEOUSLY DENIED GRAY'S MOTION FOR A JNOV OR, ALTERNATIVELY, FOR A NEW TRIAL.
 ¶ 2. Finding no error, we affirm.
 FACTS ¶ 3. On September 25, 2001, Flavian Gray, Sherry Bernaix and Anthony Anderson arrived at Security Storage Facility in a large diesel moving truck. Gray told the attendant manager, Peggy Thompson, that he was there to remove items from Greg Pippin's storage locker. Thompson called Pippin, and Pippin confirmed that he had authorized Gray to enter his locker. Thompson directed Gray, Bernaix, and Anderson to Pippin's locker, number 165. Later, Thompson noticed that the truck was no longer at Pippin's locker. Thompson left her office and found Gray emptying locker number 212, located in a different area of the complex. Bernaix told Thompson that the locker was hers, but Thompson knew that the true tenant of the locker was Dorothy Taylor. Thompson telephoned Taylor, who denied that anyone had permission to enter her storage bin.
 ¶ 4. Thompson called the police. Officer Jackie Watson arrived, followed by Officer Robert Bufkin. Officer Watson took a statement from Gray, who said he had made a mistake about the location of Pippin's storage bin.
 ¶ 5. At the trial, Gray testified that he had sought only to assist Bernaix and that he had not been involved in emptying locker 212. He stated that he had left Security Storage to purchase beer but, upon returning to Security Storage five minutes later, he discovered that the truck had moved away from locker 165. He found the truck completely loaded with furniture from locker 212. *Page 630 
 ¶ 6. The jury found Gray guilty of business burglary, and he was sentenced to five years' imprisonment.
 LAW AND ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING GRAY'S MOTION FOR A MISTRIAL.
 ¶ 7. Gray testified at his trial. The State impeached him by introducing into evidence certified copies of his prior convictions for false pretenses for writing bad checks. Gray's attorneys objected because the State had not disclosed the fact that it intended to use Gray's prior conviction record to impeach Gray. Gray claims that his prior convictions were improperly admitted and that the circuit court should have granted a mistrial.
 ¶ 8. Uniform Rule of Circuit and County Court 9.04(A)(3) requires that the prosecution give the defendant a copy of the defendant's criminal record, if the prosecution proposes to use the record to impeach. By failing to provide Gray or his attorneys with copies of his false pretenses convictions, the State was in violation of Rule 9.04. Gray was entitled to notice that his false pretenses convictions would be used against him.
 ¶ 9. The Mississippi Supreme Court has held that a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice. Wyatt v. City of Pearl, 876 So.2d 281,284 (¶ 10) (Miss. 2004). We find that no miscarriage of justice occurred in the present case. Gray gave three inconsistent statements explaining why he was at Dorothy Taylor's locker. Firstly, at the crime scene, Gray told Officer Watson that he was at Taylor's locker because Greg Pippin had given him the wrong locker number. However, at trial, Gray stated that he had known exactly where Pippin's storage locker was. Secondly, when Gray was at the police station, he said that he was at Taylor's locker because Peggy Thompson had directed him there. However, when Thompson testified at trial, she stated that she watched Gray and made sure he went to locker 165. She did not confront Gray until after she saw him move the truck to locker 212 and unload items from the locker. Thirdly, at trial, Gray testified that he was not at Taylor's locker at all but was buying beer when Gray's friends loaded the truck with Taylor's possessions. This testimony directly conflicts with the testimony of Thompson, who stated that she saw Gray at locker 212 unloading furniture.
 ¶ 10. Thus, even without the introduction of his prior convictions, Gray's conflicting statements severely impaired Gray's credibility with the jury. It cannot be said that the State's introduction of Gray's prior convictions for the purpose of impeachment was an affirmative miscarriage of justice.
II. WHETHER THE TRIAL COURT ERRED IN OVERRULING GRAY'S COUNSEL'S OBJECTIONS TO HEARSAY WHILE SUSTAINING OBJECTIONS BY THE PROSECUTION.
 ¶ 11. Gray claims that the trial court displayed favoritism towards the prosecution by overruling his attorney's objections to hearsay, while sustaining several objections by the prosecution. This Court reviews the trial court's ruling admitting or excluding evidence for abuse of discretion. Ladnierv. State, 878 So.2d 926, 933 (¶ 27) (Miss. 2004). Further, an error in the admission or exclusion of evidence must affect a substantial right of a party in order to constitute grounds for reversal. Id.; M.R.E. 103(a). *Page 631 
A. Gray's hearsay objections.
 ¶ 12. Thompson related that Gray cursed at her when she confronted Gray about transporting items out of locker 212. Over Gray's hearsay objection, Thompson further testified that Gray called her a "b____h" who had no business "dipping [her] nose into someone else's f____g business." The trial court admitted these statements after finding them probative of Gray's behavior upon being confronted at locker 212 by Thompson and Officer Watson.
 ¶ 13. On appeal, Gray argues that his statements to Thompson constituted inadmissible hearsay. This issue is without merit. Hearsay is a statement, other than one made by the declarant while testifying at the trial, that is offered in evidence to prove the matter asserted. M.R.E. 801(c). Gray's angry statements to Thompson were not offered for their truth, but to show the circumstances attending Gray's confrontation by Thompson and Officer Watson. Therefore, the statements were not hearsay.
 ¶ 14. Over Gray's objection, Officer Watson testified that he was called to Security Storage because Thompson had alerted police that two suspects were taking items out of the wrong storage unit. The circuit court properly overruled Gray's objection and admitted this testimony. The Mississippi Supreme Court has held that admitting out-of-court statements made to the police during the course of their investigations is permissible.Swindle v. State, 502 So.2d 652, 658 (Miss. 1987). "It is elemental that a police officer may show that he has received a complaint, and what he did about the complaint without going into details of it." Id.
 ¶ 15. When Gray was at the police station, Detective Donald Gaiter read Gray his Miranda rights, which Gray waived. Gray then gave a statement to the police, which was introduced into evidence. In the statement, Gray said that he was at Dorothy Taylor's locker because Thompson had directed him to the wrong locker. Gray's attorney objected to the introduction of the statement on the ground of hearsay, which the circuit court properly overruled. "Extrajudicial statements by a criminal defendant, so long as the statements are relevant to the matter being tried, are admissible in evidence." Cobb v. State,734 So.2d 182, 185 (¶ 7) (Miss.Ct.App. 1999) (citing M.R.E. 801(d)(2)(A); Gayten v. State, 595 So.2d 409, 414 (Miss. 1992)).
 ¶ 16. The trial court also allowed Officer Watson to testify that Gray did not answer Officer Watson's questions at the crime scene. Gray's silence was admissible. Id. This issue is without merit.
B. The State's hearsay objections.
 ¶ 17. Gray further argues that the circuit court erred in sustaining the prosecution's hearsay objections. He alleges that a permissible exception to the hearsay rule existed in each instance.
 ¶ 18. We recite the prosecution's hearsay objections. The circuit court sustained the State's objection to hearsay when Pippin attempted to recall what Gray told him in a telephone conversation. The court sustained the State's objection to hearsay when Alex Sanders, the owner of the truck, attempted to recall what Bernaix had asked him to do. The court sustained the State's objection to hearsay when Gray attempted to recall what Bernaix had told him when she asked him to go with her to Security Storage. The court sustained the State's objection to hearsay when Gray attempted to recall what Bernaix said to Thompson when Thompson confronted Gray, Bernaix, and Anderson about unloading items out of Taylor's locker. The court sustained the State's objection to *Page 632 
hearsay when Gray testified that he had asked Bernaix about the whereabouts of Anderson and attempted to recall Bernaix's answer to his question.
 ¶ 19. The circuit court properly sustained each of the State's objections. Each of the instances Gray cites was offered for the truth of the matter asserted, and constituted hearsay. M.R.E. 801(c). Gray did not point out any applicable hearsay exceptions to the circuit court, nor does he on appeal. This issue is without merit.
III. WHETHER THE TRIAL COURT ERRED IN DENYING GRAY A JURY INSTRUCTION FOR TRESPASS.
 ¶ 20. Gray proffered a jury instruction that would have allowed the jury to convict him of trespass, which is a lesser included offense of burglary. Harper v. State, 478 So.2d 1017, 1021
(Miss. 1985). The Mississippi Supreme Court has held that lesser offense instructions should be granted only where there is an evidentiary basis therefor in the record, and should not be granted indiscriminately. Lee v. State, 469 So.2d 1225, 1230
(Miss. 1985). In other words, a lesser-included offense instruction should be refused in cases where the evidence could only justify a conviction of the principal charge. Perkins v.State, 788 So.2d 826, 828 (¶ 8) (Miss.Ct.App. 2001) (citingRuffin v. State, 444 So.2d 839, 840 (Miss. 1984)).
 [A] lesser included offense instruction should be granted unless the trial judge — and ultimately this Court — can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge). [emphasis added]
Rowland v. State, 531 So.2d 627, 631 (Miss. 1988) (quotingHarper v. State, 478 So.2d 1017, 1021 (Miss. 1985)).
 ¶ 21. To prove the elements of burglary of a building other than a dwelling, the State must show that the defendant unlawfully broke and entered with the intent to steal or to commit a felony therein. Miss. Code Ann. § 97-17-33(1) (Rev. 2000). The lesser included offense of trespass requires entering another's property without permission or remaining on his or her property after being told to leave. See Miss. Code Ann. § 97-17-85 (Rev. 2000). In Perkins, the defendant was convicted of burglary and, on appeal, challenged the trial court's denial of a jury instruction on the lesser included offense of trespass.Perkins, 788 So.2d at 828 (¶ 7). This Court affirmed the denial of the instruction. Id. at 829 (¶ 10). We found that, since Perkins's theory of defense was that he had permission to be on the property, the evidence did not support a trespass conviction.Id. at (¶ 9).
 ¶ 22. As in Perkins, there was no evidence that would have allowed a rational jury to convict Gray of trespass rather than burglary. Gray testified that he was not present when the storage locker was burglarized, never entered Taylor's locker, never loaded any furniture into the truck, and had returned to Security Storage only after the truck had been loaded with furniture. Thus, if the jury accepted Gray's version of events, it would have believed that Gray never entered Taylor's property and had not committed trespass. Therefore, the trial court's refusal of Gray's proffered trespass instruction was not error. *Page 633 
IV. WHETHER THE TRIAL COURT ERRONEOUSLY DENIED GRAY'S MOTION FOR A JNOV OR, ALTERNATIVELY, FOR A NEW TRIAL.
 ¶ 23. Gray challenges the trial court's denial of his motions for a JNOV or a new trial. Gray points out that, when he entered Security Storage, he identified himself to the office manager, displayed identification, and allowed the office manager to verify his identity and purpose for being at the facility. Based on this evidence, Gray argues that the State failed to show that he entered Security Storage with the intent to commit a felony. Therefore, he contends, the State failed to prove an element of burglary and he was entitled to a JNOV. Gray also alleges that the jury verdict is against the weight of the evidence because his actions were inconsistent with those of a person seeking to burglarize property.
 ¶ 24. A motion for a JNOV challenges the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss. 2005). On review of the denial of a JNOV, this Court views the evidence in the light most favorable to the verdict. Id. If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the Court will uphold the verdict. Id. We are mindful that "[m]atters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Harveston v. State, 493 So.2d 365, 370
(Miss. 1986).
When this Court reviews an argument that the verdict was against the overwhelming weight of the evidence, we "must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collins v. State,757 So.2d 335, 337 (¶ 5) (Miss.Ct.App. 2000). We give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. We will reverse only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Id.
 ¶ 25. Gray was convicted of business burglary, which required the State to establish that Gray broke and entered into a building with the intent to steal or to commit another felony. Miss. Code Ann. § 97-17-33 (Rev. 2000). Peggy Thompson testified that Taylor's storage unit was closed and locked when Gray arrived at Security Storage, and that the unit was open when she confronted Gray. She saw Gray moving items out of the storage unit and into the truck. Thompson's testimony sufficiently established the elements necessary to convict Gray of business burglary. The weight and credibility of Thompson's testimony was a matter properly resolved by the jury. Drake v. State,800 So.2d 508, 516 (¶ 34) (Miss. 2001). Further, the evidence was such that the jury reasonably could have convicted Gray of burglary and the verdict was not against the overwhelming weight of the evidence. Gray was not entitled to a JNOV or a new trial.
 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OFCONVICTION OF BURGLARY AND SENTENCE OF FIVE YEARS IN THE CUSTODYOF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING. *Page 634