BARNES, J.,
for the Court:
¶ 1. Following a trial in the Copiah County Circuit Court, the jury found Chance Walker guilty of capital murder, for a murder during the commission of a robbery. Upon conviction, Walker was sentenced to life in prison without the possibility of parole or early release.
¶ 2. Walker argues on appeal that the trial court erred by allowing prejudicial photographs to be admitted into evidence. Additionally, Walker argues that the trial court erred by not granting a new trial based upon an unannounced familial relationship between a juror and a witness. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. On January 15, 2011, Enrique Ixcot was found severely beaten outside his home. Earlier that evening, Chance Walker, Natara Ellis, and Erica Sutton were driving in Walker’s automobile when Walker exited the car and instructed Ellis and Sutton to pick him up once he called them. After some time had passed, Walker instructed Ellis to pick him up. According to testimony by Ellis, Walker was in possession of a hammer and wallet when he reentered the car. The three then traveled to the home of Ellis’s grandmother, and Walker went into the back yard. Ixcot’s passport and other personal items were later found there.
¶ 4. During the trial, two photographs were admitted into evidence. Exhibit S-l was a photograph of Ixcot following his autopsy, and Exhibit S-3 was a photograph of Ixcot showing his pockets turned out and his face grievously injured. At trial, Walker objected to the admission of both photographs on the ground that they were more prejudicial than probative. The trial judge disagreed and allowed both to be admitted.
¶ 5. Additionally, a discrepancy concerning one of the jurors arose during the trial. The court could not locate the record of a summons for one juror, Deotis Catchings. However, both parties waived objections to his remaining on the jury, and the trial continued. Following the trial, information came to light concerning a familial relationship between Catchings and Ellis, a witness for the prosecution. Catchings’s brother, Roy, was married to Ellis’s great aunt (mother’s father’s sister). Catchings was thus the brother of Ellis’s great uncle *323 by marriage. Ellis’s mother was listed a possible witness for the prosecution, but was not ultimately called to testify. Ellis’s mother stated that she knew Catchings, but she could not show that he knew her daughter, Ellis, or that Ellis knew Catchings.
ANALYSIS OF THE ISSUES
I. Voir Dire
¶ 6. Walker argues that the trial court erred by not granting a new trial based upon the failure of juror Catchings to reveal his familial relationship to the prosecution’s witness. The Mississippi Supreme Court has stated that when “a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial, and, failing that, we must reverse on appeal.” T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 949 (Miss.1992) (quoting Myers v. State, 565 So.2d 554, 558 (Miss.1990)). Under the Mississippi Code, “the parties or their attorneys in all jury trials shall have the right to question jurors who are being impaneled with reference to challenges for cause.” Miss.Code Ann. § 13-5-69 (Rev. 2012).
¶ 7. When determining whether a new trial is warranted, the trial court must determine: (1) the question asked of the juror was “relevant to the voir dire examination,” (2) the question was “unambiguous,” and (3) “the juror had substantial knowledge of the information sought to be elicited.” Odom v. State, 355 So.2d 1381, 1383 (Miss.1978).
¶ 8. The juror in question, Catchings, was not related to the prosecution’s witness by blood, but was distantly related through the marriage of his brother. Catchings was, as previously explained, the brother of Ellis’s great uncle by marriage.
¶ 9. The question of whether or not the members of the venire knew Ellis was both relevant and unambiguous. However, Walker has failed to show that Catchings had substantial knowledge of his relationship with Ellis. Testimony provided by Ellis’s mother during the post-trial hearing failed to show that Catchings was aware of the familial connection between Ellis and himself. Ellis’s mother testified that while she knew Catchings, she was unaware whether or not Catchings knew Ellis. She also could not definitely say whether Ellis knew Catchings.
¶ 10. Walker relies on T.K Stanley, 614 So.2d 942, in arguing that Catchings should have answered affirmatively when the questions were posed concerning the relationship between members of the veni-re and witnesses. However, the instant case is distinguishable due to the fact that in T.K. Stanley, the juror in question clearly had substantial knowledge concerning the questions asked during trial. See id. at 949. The knowledge was then withheld during the voir dire process. Walker has not adequately shown, through the testimony of Ellis’s mother, that Catchings was even aware of his relationship with Ellis. So unlike T.K. Stanley, this case fails the third prong of the Odom test.
¶ 11. Furthermore, concerning the issue of the lack of a jury summons for Catchings, both parties waived their objections for him to remain a member of the jury. The trial judge postulated that either the record of Catchings’s summons was lost or he was inadvertently added to the jury-selection process. The trial judge stated:
Well, he could have been up to buy a car tag. I don’t know. We have a proce *324 dure. So we’ve got two choices, and I want it to be agreeable by all parties, because we can either proceed with him — he’s qualified, legally sworn — or we can replace him with an alternate. Whatever you all want to do.
Both parties’ counsel then agreed to allowing Catchings to remain as a member of the jury. While this waiver occurred prior to discovering the relationship between Catchings and Ellis, there is no indication that Catchings’s arrival without summons was in any way related to the case set to be tried. Therefore, the trial court did not err in denying Walker’s motion for a new trial.
II. Admission of “Gruesome” Photographs
¶ 12. Walker argues that the admission of two photographs was unfairly prejudicial and that these photographs unduly influenced the jury’s verdict. Specifically, he maintains that the trial court erred in allowing the photographs of a bloodied Ixcot lying on the ground and of Ixcot’s autopsy to be admitted at trial. Unless there is clearly an abuse of discretion by the trial court, “a decision favoring admissibility will not be disturbed.” Chamberlin v. State, 989 So.2d 320, 340 (¶ 73) (Miss.2008) (citing Dampier v. State, 973 So.2d 221, 230 (¶ 25) (Miss.2008)). The Mississippi Supreme Court has explained that, regarding the admission of photographs, “[t]he discretion of the trial judge is almost unlimited regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Id. (quoting Dampier, 973 So.2d at 230 (¶ 25)).
¶ 13. In the admission of gruesome photographs, the court must determine “(1) whether the proof is absolute or in doubt as to [the] identity of the guilty party, as well as, (2) whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury.” McNeal v. State, 551 So.2d 151, 159 (Miss.1989). A photograph has a meaningful evidentiary purpose when it “(1) aids in describing the circumstances of the killing; (2) describes the location of the body or cause of death; or (3) supplements or clarifies witness testimony.” Chamberlin, 989 So.2d at 340 (¶ 73) (citing Dampier, 973 So.2d at 230 (¶ 25)). “The mere fact that photographs depict an unpleasant or gruesome scene is no bar to their admission if they are relevant.” Ramsey v. State, 959 So.2d 15, 25 (¶ 27) (Miss.Ct.App.2006) (citing Dase v. State, 356 So.2d 1179, 1181 (Miss.1978)).
¶ 14. In this case, the two photographs contained probative value. Exhibit S — 1, the photograph depicting the autopsy of Ixcot, not only offered a description of the wounds inflicted upon Ixcot by his attacker, but also clarified testimony of the coroner. See Chamberlin, 989 So.2d at 340 (¶ 73).
¶ 15. Likewise, Exhibit S-3, the photograph of Ixcot lying bloodied on the ground with his pockets turned out, offers a “meaningful evidentiary purpose” in that it showed that the killing occurred during the course of a robbery. Although Exhibit S-3 can be considered “gruesome” in nature, the photograph offers proof that Ix-cot was, in fact, the victim of a robbery. It was within the court’s discretion to allow admission of this evidence. Accordingly, the trial court’s decision is affirmed.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY FOR PAROLE OR PROBATION, IS *325 AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.